```
                  UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF TENNESSEE
                       NASHVILLE DIVISION

RICHARD A. MAYERS,               )
                                 )
         Plaintiff               )
                                 )       No. 3:14-1560
v.                               )       Judge Trauger/Bryant
                                 )       **Jury Demand**
MATTHEW ELLIS, *et al.*,         )
                                 )
         Defendants              )
```

**TO:**  **THE HONORABLE ALETA A. TRAUGER**
        **DISTRICT JUDGE**

## REPORT AND RECOMMENDATION

Defendants Ronnie Williams, Robert Watson, Jeffrey Kerr, George Hurst and Brian McCartherens have filed a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Docket Entry No. 39). Plaintiff Mayers has not responded in opposition, and the time within which he was required to do so has expired.

For the reasons stated below, the undersigned Magistrate Judge recommends that these Defendants' Motion for Summary Judgment be granted and the complaint dismissed.

## STATEMENT OF THE CASE

Plaintiff Richard A. Mayers, a prisoner proceeding *pro se*, has filed his civil rights action pursuant to 42 U.S.C. § 1983 alleging that the five moving Defendants, officers of the Millersville, Tennessee, Police Department, used excessive force while attempting to take Plaintiff into custody on August 15, 2013. Plaintiff alleges that he was shot multiple times, sprayed with

pepper spray, and had his head stomped by these Defendant officers in violation of his constitutional rights under the Fourth Amendment.

The moving Defendants filed their answers denying liability and asserting affirmative defenses (Docket Entry Nos. 22 and 24). They have now filed their motion for summary judgment.

**STANDARD OF REVIEW**

A party may obtain summary judgment by showing "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Covington v. Knox County School Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine dispute of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of

providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**SUMMARY OF UNDISPUTED FACTS**

On the afternoon of August 15, 2013, a confidential informant notified the Millersville police dispatcher that Plaintiff Mayers, who had previously been convicted of a drug felony, was on his way to conduct a drug transaction at the Dollar General Store on Highway 31W in Goodlettsville, Tennessee. The informant reported that Mayers was armed and that he would commit "suicide by cop" before allowing himself to be arrested and sent back to prison. The informant stated that Plaintiff Mayers would be driving a red Geo Tracker.

The Defendant police officers decided that Defendant Hurst would intercept and apprehend Plaintiff Mayers as he came off of the northbound exit ramp from Interstate 65 onto Highway 31W. The other Defendant officers positioned their patrol cars at

various locations nearby in order to assist in the apprehension of Mayers.

Plaintiff Mayers drove his red Geo Tracker past Defendant Hurst and proceeded northbound on Highway 31W. Defendant Hurst activated his emergency lights and his siren, but Mayers's Tracker failed to stop and a pursuit ensued. Mayers turned right into a Citgo gas station, did a U-turn and headed back southbound on Highway 31W. As Plaintiff made this U-turn, he held a handgun out of the driver's side window and pointed the gun at Defendant Hurst. In his complaint, Plaintiff Mayers described this occurrence as follows: "I think I pointed my firearm in [the Defendant police officers'] general direction in order to either get them away or to make them go ahead and kill me." (Docket Entry No. 1 at 5).

Plaintiff drove southbound on Highway 31W for a short distance, turned right onto Forks Road and then into the second entrance to the Economy Inn, located on the south side of Forks Road. The Defendant police officers followed Plaintiff into the parking lot of this hotel and blocked all exits with their cars. Defendants got out of their patrol cars and positioned themselves at various locations where they could observe Plaintiff Mayers, who remained inside his Geo Tracker behind the hotel.

Defendant Williams, Chief of the Millersville Police Department, got out of his patrol car in order to approach Plaintiff Mayers. Mayers pointed his firearm at Chief Williams and

4

then at Defendant McCartherens. As Chief Williams dived back into his patrol car for cover, Defendants Hurst, McCatherens, Watson and Kerr fired their weapons at Mayers for a period of approximately nine seconds. When Defendant Kerry could no longer see Mayers pointing his weapon at the other officers he gave the order to "hold you fire." The officers approached the red Geo Tracker and found Mayers lying in the front seat. They dragged Mayers from the Tracker and recovered his handgun near the driver's door. The weapon was a .45 caliber pistol loaded with a bullet in the chamber and bullets in the magazine.

After Plaintiff Mayers was removed from his vehicle, the Defendant officers attempted to place handcuffs on him. When Mayers refused to give his arm to the officer as instructed and instead reached for a knife on his right side with his hand, Defendant Hurst sprayed Mayers in the face with pepper spray to get him to stop reaching for the knife. The officers were then able to place handcuffs on Mayers and take him into custody.

After the shooting ceased and while the other officers were attempting to secure Mayers in handcuffs, Defendant Kerr contacted dispatch and requested that an ambulance be sent to their location. Defendants have filed surveillance video from the Economy Inn showing many of the events described above (Docket Entry Nos. 44-2, and 47-2). The Defendant officers in their supporting affidavits deny that anyone "stomped" Plaintiff Mayers, and the

5

surveillance video filed with the Court fails to show any of the Defendant officers "stomping" Plaintiff Mayers. Although the record fails to contain any medical evidence concerning Plaintiff's injuries, Plaintiff in his complaint alleges that he was struck in both legs by gunfire from the Defendants.

Several months later Plaintiff Mayers wrote a letter dated July 9, 2014, addressed to Defendant Hurst which states in part as follows: "I apologize for putting you and your fellow officers in the position of having to shoot me. . . . For several hours, I sat with that very same gun at my head the day before this incident and couldn't get the courage to do it myself, but devised in my miserable mental state this plan to have others do it for me." (Docket Entry No. 48-3).

**ANALYSIS**

A district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's motion for summary judgment to insure that he has discharged that burden. *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).

To prevail in a civil rights action brought pursuant to 42 U.S.C. § 1983, a plaintiff must show (1) the deprivation of a right secured by the Constitution or laws of the United States; and (2) that the person causing such deprivation was acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978). In

6

this case, it is undisputed that the Defendant Millersville police officers were acting under color of state law at the time of the August 15, 2013, incident that gives rise to Plaintiff's claims. Plaintiff Mayers asserts that the Defendants used excessive force during his arrest, which, if true, would constitute a violation of Plaintiff's rights under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989).

The analysis of an excessive force claim depends upon whether the degree of force used was reasonable. "[T]he 'reasonableness' inquiry in an excess force case is an objective one: the question is whether the officers are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397. The *Graham* court also stated:

> The "reasonableness" of the particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving – about the amount of force that is necessary in a particular situation.

*Id*. at 396-97.

The Sixth Circuit has found that whether an officer's use of force was reasonable turns on the facts of each case. Relevant to this inquiry are (1) the severity of the crime at issue, (2) the immediate threat the suspect poses to the safety of the officer or

7

others, (3) the suspect's resistance, if any, and (4) the possibility of flight. *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004). In addition, the Sixth Circuit has found that "[t]here may be more than one reasonable response to a given situation, and when this is so, the Fourth Amendment does not require officers to use the 'most prudent course of action' to handle it." *Gaddis v. Redford Twp.*, 364 F.3d 736, 775 (6th Cir. 2004).

In this case, the undisputed evidence establishes that the Defendant officers were aware that Plaintiff Mayers was on his way to conduct an illegal drug transaction, that he was armed, and that he had stated to others that he would commit "suicide by cop" before he allowed himself to be taken into custody and returned to prison. Moreover, the evidence, including Plaintiff's admission in his complaint, establishes that during the ensuing car pursuit Mayers brandished his firearm from the window of his car and pointed it at Defendant Hurst. In addition, when Chief Williams got out of his car to approach Plaintiff's Tracker behind the Economy Inn, Plaintiff pointed his firearm at Williams and thereafter pointed it at Defendant McCatherens. Finally, Plaintiff in his letter of July 9, 2014, to Defendant Hurst apologized "for putting you and your fellow officers in the position of having to shoot me." He further admitted that he had contemplated suicide on the day before the incident giving rise to the complaint but that, lacking the courage to commit suicide himself, he "devised in my

8

miserable mental state to have others do it for me." (Docket Entry No. 48-3 at 2).

From this uncontroverted evidence, the undersigned Magistrate Judge finds that no reasonable jury could conclude the Defendants acted unreasonably in shooting Plaintiff Mayers after they observed him point his firearm at Chief Williams and Officer McCatherens.

Plaintiff Mayers also alleges that the Defendants' use of pepper spray during his arrest amounted to excessive force under the Fourth Amendment. Defendant Hurst has admitted that he used pepper spray to obtain control of Mayers after the shooting and to prevent Mayers from grabbing a knife with his right hand (Docket Entry No. 48 at 6). Following use of the pepper spray, Hurst was able thereafter to secure Mayers with handcuffs behind his back.

The Sixth Circuit has found that the use of nonlethal pepper spray can be proper in circumstances in which a detainee is unsecured, acting violently, and posing a threat to himself or others. *Cabaniss v. City of Riverside*, 231 F. App'x 470, 413 (6th Cir. 2007). Here, Mayers was unsecured, refusing to give his hands to the officers and apparently reaching for a knife when Officer Hurst used the pepper spray on him. Considering the undisputed evidence in this case, the undersigned further finds that, under these circumstances, no reasonable jury could find that Defendant

Hurst's use of pepper spray on Plaintiff Mayers was objectively unreasonable and therefore a violation of the Fourth Amendment.

For the foregoing reasons, the undersigned Magistrate Judge finds that there is no genuine dispute as to any material fact and that the moving Defendants are entitled to judgment as a matter of law.

### RECOMMENDATION

For the reasons stated above, the undersigned recommends that the Defendants' Motion for Summary Judgment (Docket Entry No. 39) be granted and the complaint dismissed.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has **14 days** from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have **14 days** from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within **14 days** of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 106 S. Ct. 466, 88 L.Ed.2d 435 (1985), *Reh'g denied*, 474 U.S. 1111 (1986).

**ENTER** this 10th day of February, 2016.

/s/  John S. Bryant
JOHN S. BRYANT
United States Magistrate Judge