# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **RICHARD A. MAYERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:14-cv-01560** |
| | ) | |
| | ) | **Judge Trauger** |
| **MATTHEW ELLIS, RONNIE WILLIAMS,** | ) | **Magistrate Judge Bryant** |
| **ROBERT WATSON, RUSS WINKLER,** | ) | |
| **JEFFREY KERR, GEORGE HURST, and** | ) | |
| **BRIAN McCARTHERENES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

For the reasons set forth herein, the court will adopt and accept Magistrate Judge Bryant's Report and Recommendation ("R&R") (ECF No. 125), recommending that the defendants' Motion for Summary Judgment be granted and that judgment be entered in the defendants' favor.

## I.    Procedural Background

The defendants filed their Motion for Summary Judgment (ECF No. 39) on May 13, 2015, along with a memorandum of law, statement of undisputed material facts, numerous exhibits, and five affidavits. The initial scheduling order issued by Magistrate Judge Bryant forewarned the plaintiff that the deadline for filing a response to a motion for summary judgment or other dispositive motion was June 12, 2015, unless the court granted an extension. (ECF No. 28, at 3–4.) The order also warned the plaintiff that failure to respond to a motion for summary judgment and statement of facts "may result in the Court taking the facts alleged in the matter as true and granting the relief requested" (*id.* at 4) and notified him that he could not simply rely on the facts set forth in his complaint; he must instead demonstrate the existence of a material factual dispute with citations to the record, affidavits, or other admissible evidence. The plaintiff was also directed to read and comply with Rule 56 of the Federal Rules of Civil Procedure and with Local Rule 56.01(a). (*Id.*)

Notwithstanding these instructions, the plaintiff never filed a response in opposition to the motion

for summary judgment, nor did he file a motion to extend the deadline for responding.[1] He instead filed other motions, including a Motion to Modify and Amend Previous Habeas Corpus, Emergency Motion for Temporary Restraining Order, and several motions to amend his complaint and to appoint counsel.

The magistrate judge filed his R&R on February 10, 2016. (ECF No. 125.) On February 12, 2016, the plaintiff filed a Motion to Proceed with Prosecution. (ECF No. 128.) In an Order entered on February 18, 2016, the court indicated that it would construe that motion as objections to the R&R. In the same order, the court directed the defendants to respond to the plaintiff's filings. The defendants did so (ECF No. 133), pointing out that the date of filing and its content suggested that the plaintiff's Motion to Proceed with Prosecution may have been submitted before he received service of the R&R.[2] The defendants nonetheless responded to the substance of the plaintiff's filing but also requested leave to file another response if the plaintiff filed actual objections to the R&R.

On February 29, 2016, the plaintiff filed his Motion in Response to Magistrate Judge Bryants Recommendation for Summery Judgement [sic] in Favor of the Defendants (ECF No. 134). The court construes this document too as objections to the R&R. The defendants filed a response (ECF No. 136) to these objections.

## II.     Standard of Review

When a party files objections to a magistrate judge's report and recommendation regarding a dispositive motion, the district court must review *de novo* any portion of the report and recommendation to which objections are properly lodged. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B) & (C). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

---

[1] The plaintiff filed a "Motion for Emergency Enlargement" (ECF No. 66) on September 8, 2015, well after the deadline for responding to the Motion for Summary Judgment had already expired. This motion sought a thirty-day enlargement of "time from Sept. 10th until Oct. 10th" and specifically asked that the court "delay any judgement [sic] until Oct. 10th giving the plaintiff additional time to recoperate [sic] from the last round of destruction at the hands of CCA operatives as well as rightfully amend his motion and correctly move forward." (ECF No. 66, at 3.) The motion did not actually request an extension of the deadline for responding to the defendants' summary judgment motion.

[2] The R&R was filed on February 10, 2016 and served on the plaintiff via certified and regular mail. The return receipt for service of the R&R upon the plaintiff is also dated February 10, 2016 and was returned to the court on February 12, 2016. (ECF No. 127.) It is unlikely but not impossible that the plaintiff received the R&R and responded to it within two days.

The court may decline to review any objections that are not "proper." To qualify as proper, "objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x. 354, 356 (6th Cir. 2001) (citing *Miller*, 50 F.3d at 380). The Sixth Circuit has explained that this specificity requirement is necessary in order to conserve judicial resources. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) ("A general objection to the entirety of the magistrate's report has the same effects as would a failure to object," and requiring review of such an objection would "mak[e] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.").

Largely for the same reason, the presentation of new evidence in objections that was not presented to the magistrate judge is disfavored. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). "It is not in the interest of justice to allow a party to wait until the Report and Recommendation . . . has been issued and then submit evidence that the party had in its possession but chose not to submit. Doing so would allow parties to undertake trial runs of their motion, adding to the record in bits and pieces depending upon the rulings or recommendation they received." *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998) (citations omitted); *accord Paterson Erson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round. In addition, it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge.").

III.    **The Motion for Summary Judgment and the Plaintiff's Objections**

The plaintiff's July 2014 complaint in this action alleged, in a nutshell, that he had been subjected to the use of excessive force by the defendant police officers in the course of the plaintiff's arrest on August 15, 2013. Specifically, the plaintiff alleged that he was shot in both legs, dragged from his vehicle,

stomped on, and sprayed with pepper spray. The defendants remaining in this action after the court's initial review were confidential informant Matthew Ellis; Millersville police officers Jeffrey Kerr, Ronnie Williams, Robert Watson, George Hurst, and Brian McCartherenes; and Russ Winkler, who was not actually identified in the complaint other than being listed in the case caption, but whom the court presumed to be another Millersville police officer.[3] Service was never properly effected upon Matthew Ellis, and he has never entered an appearance in this action. (*See* ECF No. 38 (unexecuted Summons returned).) The record reflects that the plaintiff never submitted a summons for Russ Winkler, so Winkler has not been served and has likewise never entered an appearance.

Defendants Kerr, Williams, Watson, Hurst, and McCartherenes were properly served and, after answering the complaint, filed their motion for summary judgment. In affidavits submitted in support of their motion, these defendants described from their perspective the events that led to the plaintiff's shooting and arrest. Based upon the evidence submitted by the defendants, the magistrate judge determined that no reasonable jury could conclude that the defendants' use of potentially deadly force against the plaintiff was unreasonable. More specifically, the undisputed evidence in the record indicates that the officers fired their weapons at the plaintiff only after the plaintiff pointed his weapon in the direction of the police officers. In addition, the police officers had previously been notified that the plaintiff intended to commit "suicide by cop." The magistrate judge also found that defendant Hurst's use of pepper spray was reasonable because the plaintiff was resisting being handcuffed and trying to reach for a knife in a sheath at his hip. Finally, the magistrate judge concluded on the basis of the surveillance video submitted by the defendants that, contrary to the allegations in the plaintiff's complaint, no defendant had actually stomped on the plaintiff.

In the plaintiff's Motion to Proceed with Prosecution (ECF No. 128), filed just after his receipt of the R&R, the plaintiff asserts that the fact that one of the defendants has come under a recent, well publicized investigation for unethical behavior and was caught in a prostitution sting establishes a need

---

[3] The plaintiff filed as an exhibit to one of his motions an unverified copy of an Investigative Report by the Tennessee Bureau of Investigation ("TBI"), dated September 29, 2013, authored by TBI agent Joseph Boyd (originally named as a defendant in this action but dismissed on initial review) and approved by "SAC/ASAC" Russell Scott Winkler. (*See* ECF No. 134, at 23.) It therefore appears that Winkler is or was a TBI agent who had no direct involvement in the events giving rise to the plaintiff's claims.

for the United States Justice Department to investigate and prosecute the defendants for involvement in a criminal conspiracy. (ECF No. 128, at 1.) The plaintiff states that he "will" show proof that each named defendant "knowingly and willfully committed the criminal acts of conspiracy to violate civil rights." (*Id.* at 2.) The plaintiff does not submit any actual proof or identify what proof he intends to submit. The plaintiff further asserts that unspecified "stores of evidence" prove that the defendants are "bad cops" whose credibility is suspect.

In his "Motion in Response" (ECF No. 134), the plaintiff essentially insists that he is entitled to a jury trial and that he was waiting until trial to present his evidence. He attempts to refute one element of the evidence submitted by the defendants, specifically their statement that he was attempting to reach for a knife in a sheath at his hip while they were trying to arrest him.[4] Otherwise, the plaintiff generally argues that the defendants are lying, that they violated his rights and are "rogue" cops whose credibility is questionable, and that the court should therefore deny summary judgment. (*Id.* at 3.) In a "Summary in Support of All Motions" attached to his motion, the plaintiff complains about his treatment by the Tennessee Department of Correction, stating that he has been continually "in a state of perpetual transit from one lockdown to another one" and denied access to the law library. (*Id.* at 6.) He also asserts that he did not respond to the defendants' motion for summary judgment because he was physically unable to do so, being confined to a wheelchair at a maximum security unit.

---

[4] Attached to his motion is a photograph of what appears to be the front seat of a vehicle that also depicts a knife with a cord wrapped around its handle. The photograph is accompany by an unverified copy of a TBI Investigative Report, which states that TBI Officer Joey Boyd conducted a crime scene investigation of the plaintiff's vehicle after the shooting incident. Among other things, a "silver knife with a green paracord handle" was located on the front passenger seat. (ECF No. 134, at 23.) The plaintiff insists that this was his only knife and that it remained at all times on the front seat of his vehicle. He thus attempts to contest the defendants' statements in their affidavits that the plaintiff had a knife in a sheath at his hip that he was trying to pull out while the defendants were trying to handcuff him. Because the plaintiff's statement is not sworn and this photograph is not verified, it does not qualify as admissible evidence that can be considered in the context of a motion for summary judgment. Moreover, the fact that the knife was later located on the front seat of the plaintiff's vehicle does not refute the officers' statements that it was in a sheath at the plaintiff's hip at the time of his arrest. There is no evidence in the record as to what the officers did with the knife after taking it off the plaintiff's person at the time he was arrested.

In the event the court were inclined to consider the plaintiff's statement and photograph regarding the knife, the defendants have also submitted the (also unverified and unsworn) TBI Investigative Report of an interview of the plaintiff conducted by TBI agent Joseph Boyd on August 20, 2013, just days after the plaintiff's arrest. In this interview, the plaintiff allegedly objected to having been pepper-sprayed at the time of his arrest, stating that he was already handcuffed at the time, but he admitted that his knife was sheathed at his right hip. (ECF No. 136-2, at 2.)

## IV.    Discussion

The magistrate judge recommends that the court grant the defendants' motion for summary judgment on the basis that the evidence presented by the defendants is undisputed and supports their assertion that the use of force against the plaintiff was reasonable in the context in which it was used.

Summary judgment is proper "if the movant shows that there is no genuine issue as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475–76 (6th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present *specific facts* demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Moreover, if, "after adequate time for discovery and upon motion," the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case[ ] and on which that party will bear the burden of proof at trial[,]" a court should enter summary judgment in favor of the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the non-moving party fails to establish the existence of an element essential to his case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. Thus, if the non-movant does not support the elements of a claim or defense, the moving party is "entitled to judgment as a matter of law."

Applying this standard to this case, the court must grant the defendants' motion for summary judgment. The plaintiff here has not presented any specific facts supporting his own version of events or refuting the defendants' version. Moreover, the objections submitted by the plaintiff do not qualify as "proper" objections because they are not sufficiently specific. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). In fact, other than contesting defendant Williams' statement that the plaintiff was reaching for a knife while the defendants were trying to handcuff him, the plaintiff does not identify any specific portion of the magistrate judge's factual findings to which he objects. As set forth above, the plaintiff's document is not sworn under penalty of perjury and his exhibits are not verified. They are therefore not in a form acceptable for purposes of responding to a motion for summary judgment. (*See* Note 4, *supra*.)

Moreover, as the defendants argue in their response to the plaintiff's objections, it is within the court's discretion to refuse to receive or consider new evidence when ruling on objections. *Direct Line Corp. v. Carrington*, No. 3:10-0423, 2013 WL 2456712, at *1 (M.D. Tenn. June 6, 2013), *aff'd* (Feb. 12, 2015). The plaintiff explains that he was hoping to save this "smoking gun" evidence for trial instead of submitting it in response to the defendants' motion for summary judgment, as the procedural rules require. The court declines to consider this evidence, because (1) it is not in an admissible form; (2) it was not submitted at the appropriate time; and (3) it does not actually refute the defendants' testimony.

The plaintiff's claim that he was physically unable to respond to the motion for summary judgment because of his medical condition is belied by the fact that he was actively pursuing a civil action against Corrections Corporation of America at the same time as he was pursuing this lawsuit, *Mayers v. Corr. Corp. of Am.*, No. 3:14-cv-01755 (M.D. Tenn.). During the time frame from May 13, 2015 through June 12, 2015, when he was supposed to prepare a response to the motion for summary judgment, the plaintiff instead filed numerous motions in the other lawsuit. (*See id.*, ECF Nos. 89, 90, 91, 92, 93, 96, 97.) In the case at bar, the plaintiff filed a motion for appointment of counsel on July 5, 2015, asserting that CCA "continue[d] to carry out a campaign of retaliation" and had made it "impossible" for the plaintiff to do research involving this case. (ECF No. 56, at 1.) No research was required, however, for responding to the defendants' statement of undisputed facts. Moreover, the plaintiff still did not request an extension of the already-expired deadline for responding to the motion for summary judgment or request the court's assistance in obtaining research materials. Thereafter, the plaintiff filed nothing in this case until his

September 8, 2015 "Motion for Emergency Enlargement" (ECF No. 66) (discussed in Note 1, supra), which did not actually address the motion for summary judgment.

The court is cognizant that the plaintiff proceeds *pro se* and, as such, is entitled to liberal construction of his pleadings and the evidence he presents. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). He is not, however, excused from compliance with court-imposed deadlines or other "straightforward procedural requirements that a layperson can comprehend as easily as a lawyer." *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991). Consequently, the plaintiff's protestations that prison officials have deprived him of access to the courts by moving him frequently, keeping him in solitary confinement, and preventing him from obtaining legal research materials come too late. Even more critically, these assertions are not supported by the record. In sum, the plaintiff has not complied with the Federal Rules of Civil Procedure or the court's clear deadlines. He did not respond to the defendants' motion for summary judgment, and he did not file proper objections to the magistrate judge's R&R.

## V.    Conclusion

The defendants carried their burden of showing that no genuine issues of material fact are in dispute, and the plaintiff failed to present specific, admissible facts demonstrating a genuine issue for trial. He also failed to submit proper objections to the R&R. The court therefore accepts and adopts in their entirety the magistrate judge's statement of facts and conclusions of law, as well as the recommendation that summary judgment be granted in favor of the moving defendants.

In addition, the court finds that the claims against defendants Russ Winkler and Matthew Ellis are subject to dismissal based on the plaintiff's failure to effect timely service upon those defendants or to prosecute his claims against them. This action will therefore be dismissed in its entirety.

An appropriate order is filed herewith.

ALETA A. TRAUGER
United States District Judge